on behalf of Ted Earl Severeid, the appellant in this case. Can you hear okay? Yes. Thank you. Where this starts off going wrong is in pre-trial, with the admission of the posted picture file, which the government was good enough to include a copy of, a redacted copy of, in its excerpts of records. But at trial, it goes off the track when the prosecutor, right at the end of a morning's testimony, asks a witness, an Allen Alt, whether it was true or not that either Ted Severeid threatened to throw urine on a Mexican guard. Immediately the court went into recess. The lawyers went into sidebar. And an hour and a half later, when everybody came back, the judge then issued a general curative instruction that what the lawyers say is not evidence. That wasn't enough. Early in this case, when the motions were being decided, the judge had said that, and I quoted this in my brief, a jury confronted with the prior act evidence at issue would be unduly influenced by the portrayal of the defendant as a sexually deviant, urine-tossing, violent offender. Yeah. Let me ask you about this. This was when Mr. Alt is testifying, correct? Yes, Your Honor. I read the footnote in the judge's order upon which the judge bases her sort of curative instruction, saying you weren't supposed to say this. But as I read that footnote, it's ambiguous. The footnote says, if Alt testifies, however, portions of item 5, that the defendant took the blame for a previous disciplinary action against Alt. Obviously, the district judge interpreted this not to allow mentioning uncross in the form or on the occasion in which it was. But had I been the prosecutor, I would have read that note as a fairly broad permission to use this as impeachment, because the argument is, well, Alt, didn't he take the blame, getting you off the hook, and therefore, you feel grateful and are willing to testify in his favor here. So I understand that the judge wanted it out. I understand the judge issued a curative instruction. But I don't regard the prosecutor on this particular occasion as having done something that he should have known better. When we get to vouching, Mr. Prosecutor, I think you should have known better, but on this one. So what's your response to that? I think the judge was clearer than perhaps the prosecutor feigned. I think the judge said that, yes, I mean, you can, if you bring this up, if Alt testifies, you can ask, well, didn't Severide take the blame for you in a prior disciplinary hearing? What does urine tossing have to do with that except inflaming the jury, prejudicing the jury, and portraying Ted Earl Severide as some sort of deviant? I mean, it's clearly inflammatory. And then the curative instruction is an hour and a half later, and it's not specific. And whether the jury was left with an hour and a half to mull over the question, isn't it true? Or to forget what the question was. Well, that's a hard one to forget. Check their e-mails. I beg your pardon? We don't know what juries do in an hour and a half in the jury room. No, we don't. We don't. It's not likely that they mull over the last question. Well, the last question has time to settle in, to permeate their consciousness. But it seems that you are, I don't mean to belabor the point, but I'm just so tempted because Judge Davis has the same problem. We're former trial court judges. And so it's often really unhelpful to come in and say to a jury, forget that last question about that urine tossing incident. That would be wrong to remember that. Don't consider that. And so it's typically, I mean, in all seriousness, counsel, it's hard to fault a district judge for not calling attention to the problem. And this dilemma that you so astutely point out, you need a specific curative instruction, but a specific curative instruction poisons the well even more, is why the motion for mistrial needed to be granted. And why the prosecutor — Before you get to that, what would you think the Court should have done in that situation? Granted defense's motion for the mistrial. So it's not the problem, it's not the curative instruction. You just think there was no way to unring the bell? No way to get the ink out of the milk, no, Your Honor. Okay. So we have that incident. Then we have this posted picture file. Now, what the jury saw was a redacted version, what the government so kindly included in its excerpt of records as an exhibit. But the redacted version, what the original posted picture file said was that Severide — says, Inmate Severide, redaction. That said, sexually assaulted his redaction female counselor while at the state training school for boys at Eldora, Iowa. Another staff member was injured when he came to the assistance of the redacted female counselor. Upon his return, sick, back to general population, he attacked another redacted female staff member, seriously injuring redaction her. Now, what the prosecutor urged and — But at least you got all the bite marks taken out. Well, we did, yes. Meaning you got a lot. Meaning the question in this case really is who started the fight and how did the bite marks show up on the guard? Well, so the redaction takes away all the mention of his previous biting experience. It's — that's not a question how the bite marks showed up. Severide admitted biting the guard. He said it was self-defense. He was being choked. But what this — Yeah, but he sounds like Mike Tyson. I mean, it's just — Well, yes. And this is — when — this is a trial of credibility. Was it self-defense or did Severide attack the guard without — you know, without any kind of justification, not in response to what the guard did, just on his own initiative? And this whole posted picture file, it's redacted to sanitize it and keep the jury from knowing that Severide is a sexual deviant. But yet it's being admitted to show its effect on the guard's state of mind. And the guard wasn't female. This — the decision to admit this when Severide himself was in the special housing unit of a maximum security United States penitentiary where everybody in the world knows the most dangerous — or They are dangerous inmates. If they weren't dangerous inmates, why would they be in a maximum security prison in the special lockdown unit within the maximum security prison? So all of this is overkill. And the idea you can clean it up by taking out the sexual deviancy does Severide a disservice. He's not known to just jump on male guards and attack them. He has a history of sexually assaulting female guards. So the judge erred when they allowed this to go in to show a prior — to show C.O. Nemchik's state of mind. Now — You agree, I imagine, in light of what you just said to us, which seems to me to be perfectly accurate in your description of your client and the circumstances, that showing prejudice here from an evidentiary ruling is even more onerous than it normally is in a routine case. It is. It's a credibility case, Your Honor. But what you just said bears very heavily on your client's credibility, doesn't it? Certainly. The prosecutor pointed that out. In closing argument, he talks about his three prior convictions, although these weren't for any reason other than to attack the credibility. But he hammers these home, you know, that this would be his fourth conviction. And what the rules of evidence allow is proof of prior convictions to go to the credibility of the witness. And that was properly gotten into and, I think, exploited beyond quite propriety, frankly. But we don't need this posted picture file saying that someone in a maximum security special housing lockup is a dangerous individual because the guards already knew they were dangerous individuals. Nemchik himself, when asked about it, and it's curious here, too, is that this is right off the bat, the prosecutor's overzealousness becomes apparent. Nemchik was asked about it. He was also asked, now there are some items that are redacted, blacked out. Were they blacked out in the posted picture file you saw? And Nemchik says no, implying once again that there's evidence that the jury doesn't get to hear. But when asked how did it affect your decision on how to react, Nemchik replied, I was aware that he assaults staff and is very dangerous. But this wasn't needed to convince Zio Nemchik that he was an assaultive, dangerous person. And then the redactions in there, I don't know if the jury could fill in the blanks, but it's pretty obvious to me that there's a personal pronoun after the injuring there where her wasn't knocked out and him was put in. Now, you've just used up all your time. Let's hear from the other side, the government, and then we'll give you a chance to rebut. Thank you. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. Were you the trial attorney? No, I was not. Does your office have a habit of not letting the trial attorney argue his or her own appeal? I mean, what's the practice in your office? It's actually kind of a mix. Generally, if there's a claim of prosecutorial misconduct, we generally have someone other than the trial attorney argue the case on the assumption that it gives the Court a more objective and less personal, you know, where the prosecutor isn't going out of his way to defend himself, somebody else is looking at it a little more objectively, basically. I see. Okay. Sometimes prosecutors need to come and defend themselves. Or hear from us about why they did wrong. I will certainly pass along anything you say. Well, I might start with vouching, but... Okay. I mean, I just want to, before we get to the vouching, on the question about the urine, as you pointed out, the Court's order was open to interpretation. Clearly, the prosecutor should have approached the Court before asking the question. The government does not dispute that. But in context, the trial court handled it appropriately. The hour and a half that Mr. Hartzell dwelled on was basically the lunch break. So it was, the jury didn't hear any evidence in the interim, the Court gave a curative instruction that didn't instruct them to disregard the question, and that was sufficient based on the facts of the case. On the posted picture file, again, because of the self-defense claim, the victim's knowledge was an issue of how the defendant acted, and that was certainly relevant to that. Now, on the closing arguments. Okay. The issue about the tattoo. Basically, as the record shows, the defendant testified that he had a tattoo of the Virgin Mary that was, presumably the relevance was he was trying to argue that anybody that saw that tattoo would know that he was of Hispanic origin. The prosecutor certainly shouldn't have phrased his closing argument the way he did regarding the tattoo. But if you read it in context, he's asking the jury to look at the video of the injury assessment that was done after the assault and judge for themselves whether they could easily see the tattoo. And that's certain that, to the extent he's doing that, that certainly is appropriate. And again, in the context of this argument, that one comment is not a problem. You know, what bothers me about vouching, I'm not sure it's enough to reverse, but the prosecutor says Nemchik is not a racist. He is a good, honest officer. Why wouldn't I tell my law clerks that that is a textbook example of vouching? What's it missing to be the perfect example of impermissible vouching? I think what it's missing, Your Honor, is the implication that there is something outside the record that the government knows that the jury doesn't to support that statement. Are you saying this is not improper vouching? No, I'm saying it is. It's vouching, but it's not the worst-case scenario. Is it improper vouching? Yeah. Okay. The prosecution has said that. I'm not disputing that. You're just trying to answer my question of a way it could have been worse? Exactly. Oh, that's so much better. Okay. So why is it permissible? Why was it permissible? Well, I'm not saying it's permissible. What I'm saying is it wasn't plain error. Again, there was no objection to any of this during the closing argument, so we're looking at it under the plain error standard. A good, honest man, a good, honest officer is essentially, could be characterized as a simply common-sense trait phrase. Why isn't it plain error? Why isn't it plain error? It's a glaring error, counsel. Because there's the lack of evidence of prejudice to defend it, basically. I mean, if the defendant ---- How can you say there's no prejudice so confidently? I mean, this is a swearing contest. The officer, the guards have one story. Severide and Ault have a different story. And the only question for the jury is who's telling the truth? And the prosecutor comes in at closing argument and says, Nemchuk's a good, honest man. I mean, so the prosecutor is saying, here, believe that guy. But he is not suggesting, again, in context, I don't believe the prosecutor is suggesting that there is some outside evidence that the court or the government is somehow monitoring to make sure that he's telling the truth. It was just ---- again, it was improper. It shouldn't have been said. But it was not the ---- it did not rise to the level certainly of plain error that would require reversal. But it is a glaring error, counsel. I'm not sure why it doesn't. I'm not sure why it doesn't. And I appreciate it. I wasn't trying to be flip earlier. It really does seem to me to be quintessentially the type of case, because it's one guy's word against another guy's word, where vouching might really matter. So if we look at the context, I'm not sure that it helps you. It might hurt your case. Would you like an opportunity to respond? I ---- what I would say is, first of all, and again, looking at the bigger context, I think the evidence shows that the government did a very effective job of discrediting the defendant's corroborating witness, who was claiming that he ---- basically, he gave a version that was very similar to the defendant's. The government pretty much established that he was not in a position to see what he claimed he saw. So you've got that kind of factoring in, too. The ---- Which lessens the need for vouching, even assuming that vouching is ever proper. I think what the ---- in closing arguments, you don't want to focus on one stray comment that could be characterized as, again, it's not suggesting that the prosecutor knows something the jury doesn't know. Well, you know, you keep saying it's not suggesting that. I think it does suggest that. I mean, he says he is a good, honest officer. Now, if I'm the juror and I'm hearing the prosecutor say that, I might ask myself, well, how does he know he's a good, honest officer? He says it as if it's true, and I've just heard some testimony here. Well, that suggests he knows something about this officer that I don't know. So I think you're wrong. I think it does suggest that he knows something outside the record. Okay. And again, going back, it is plain error. There was no objection. If there had been an objection, this is the kind of comment that could have been easily curated. Well, you know, the kind of curative instruction that you're likely to get is one of those wimpy little tap-on-the-wrist curative instructions that says, lawyer's argument is not evidence. I instruct you to disregard that statement. I wish the district judge in a circumstance like that would say the prosecutor just vouched for the witness, which is a technical term for something the prosecutor knows that he is not allowed to do. He has just told you that the officer has told the truth. The prosecutor knows better than that. I instruct you to disregard the improper comment by the prosecutor. Now, if that was going to be the curative instruction, I, the defense attorney, would have objected. But all I was going to get was, I know I'm just going to get one of those wimpy little deals about please disregard. And again, in context, and looking at what the prosecutor actually said, he did not say the witness told the truth at trial. He just said he's a good honest officer. He just said he's a good honest officer. That's different from saying he testified truthfully at trial. Did he tie it to anything in the evidence before the jury? I don't believe so. Like I said, as you read it in context, it's basically he's using the, he's a good guy who puts his foot forward. I know he's a good guy. Trust me. I don't think that's true. I'm your prosecutor. He's your correctional officer. Trust me, ladies and gentlemen. I know he's a good guy. Perhaps what he was trying to emphasize was the difference between the defendant and the victim. I'm sure he was. I'm sure he was. I mean, compared to the victim. How seasoned was this prosecutor? He's very experienced. Oh, that makes it worse. I was hoping you would say this was his first trial. Rookie mistake would have been a much better answer. Yes. But apparently not a truthful one. Right. So thank you for your candor. But again, in the context of the whole trial, one statement made in passing that wasn't dwelt on, that was not objected to, that the Court didn't have an opportunity to cure, does not result in a reversal under this Court's case law. I don't believe it. He wasn't annoyed that a plea offer was rejected, was he? I mean, sometimes prosecutors permit that kind of consideration to affect their performance at trial. Due to this prosecutor's experience, going to trial is not an issue for him. I don't think so. He just had a bad day. Why do you say the Court did not have an opportunity to correct this error, which I have called glaring now three times. It's a bit of a hint. Is that because you think there was no opportunity simply because there was no objection? Right. I think a lot of judges are reluctant to interrupt an argument sua sponte if there's no objection. Unless there's perhaps plain error that's flying by. Anyway, that's what you meant. And that's what I mean.  actually. How would that be exactly, that the Court wouldn't view that as vouching? Let me rephrase that. The Court didn't review it as something that would be reversible. All right. I mean, I don't – obviously, I don't know what was going through the Court's mind. Sure. Unless the Court has any other questions. No, you used up all your time, but let's put a minute on the clock. Thank you. I'm glad that the prosecutor mentioned context. And the Court is well aware that this is a case of credibility. And the first trial hung. The jury hung. The second trial, the jury almost hung. They sent a question to the judge, what if we can't reach a verdict? I'm sorry. I missed that, your last statement. The jury sent a question to the judge, what happens if we can't reach a unanimous verdict? And the judge told them to keep deliberating. So it was a very close case. Did it get to the point of a formal Allen charge? No. Okay. Bearing in mind, I'm going to – I want to give you some context that when Nemchik was – on direct examination was asked if the inmates could be armed, the answer was they could be. Some excerpts from closing argument to give the Court context. Now, when the defendant and Alt testified, they acted like butter would melt in their mouths. You know, they have to be very good liars, ladies and gentlemen. They are con men. They have to be con men with the style of life, the pattern of life they have chosen to pursue, pages 52 to 53. I submit, ladies and gentlemen, if anything, this case has shown just how incredibly dangerous United States prison and the special housing unit is, especially for our correction officers who are vastly outnumbered and unarmed while the inmates are, in fact, armed. No objection. No objection. Page – that was page 54. No objection to any of what you're reading to us. No. How – what are we supposed to do about that? Find plain error is what I'm asking the Court to do because it keeps going on and on. And the – But the Sixth Amendment must mean something. The Sixth Amendment means an awful lot. The counsel missed these. And I do think after two trials he was exhausted. And somehow – But defense counsel's job is to monitor that. And so what you're asking us to say is that it was okay for the defense counsel to not catch it. But we're expecting the Court to jump in and interrupt when there's no objection. No. No. And it's not okay. It's a mistake. But plain error – It's a really tough standard. Yeah. But it's greater than a mistake. But if you – but Nemchik and the others told you the truth. It is the defendant and all two are liars here. Page 56. If the corrections officers had done something wrong, we wouldn't be here. They wouldn't have reported this to the FBI. There would have been no trial. Page 56. Pictures of the prison. You've seen the video. It's clean. The correction officers are professional. They don't let society down. And I'm asking you, don't let them down. This person is an assaultive person. He assaulted Nemchik. Justice for him is a conviction. That was the prosecutor's last statement before the case was submitted, before the judge read instructions. In the context of this case, yes, the defense attorney made a mistake. The prosecutor was overzealous and decided this jury wouldn't hang, that he apparently didn't give it his all at the trial before. This time, he not only gave it his all, he gave it too much. Okay. Thank you. Thank you. Thank both sides for their arguments. United States v. Severeye now submitted for decision. And speaking only for myself, although perhaps for the panel, I suggest you have a word with this prosecutor. Yes, Your Honor.
judges: Davis, Fletcher, Christen